Filed 3/12/13  P. v. Toy CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO TOY et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B230492<br>(Super. Ct. No. BA363478)<br>(Los Angeles County)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[CHANGE IN JUDGMENT] |

THE COURT:

Following the issuance of our opinion in this matter on February 11, 2013, the People filed a petition for rehearing.  We deny the petition, but order that the opinion be modified as follows:

1.  On page 10, second full paragraph, first sentence, replace "life without the possibility of parole" with "life with the possibility of parole."

2.  On page 10, last paragraph starting with "Both," retain the first sentence, but substitute the following for remainder of the paragraph:

> Because a life sentence has a default minimum term of seven years
> (§ 3046, subd. (a)(1)), the doubled sentence for the premeditated
> murder count is a sentence of life with a minimum of fourteen years.

(*People v. Jefferson* (1999) 21 Cal.4th 86, 99-100.)  Thus, the appropriate sentence for this count (count 1) is life imprisonment with a minimum term of 14 years followed by 25 years to life for the enhancement.  The sentences on the other counts remain as orally pronounced.

3.  On page 11, under Disposition, substitute the second sentence with the following:

We modify Toy's sentence on count 1 (and concomitantly amend the Abstract of Judgment) to reflect a sentence of life imprisonment with a minimum term of 14 years followed by a consecutive 25-year-to life sentence for the discharge-of-a-firearm enhancement.

This modification changes the judgment.

Respondent's petition for rehearing is denied.

John S. Fisher, Judge

Superior Court County of Los Angeles
_____


Leslie Conrad, under appointment by the Court of Appeal, for Defendant and Appellant Antonio Toy.

Alan Stern, under appointment by the Court of Appeal, for Defendant and Appellant Marvin J. Wren.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

Filed 2/11/13  P. v. Toy CA2/6 (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO TOY et al.,<br><br>    Defendants and Appellants. | 2d Crim. No. B230492<br>(Super. Ct. No. BA363478)<br>(Los Angeles County) |

Marvin Wren (Wren) and Antonio Toy (Toy) appeal their convictions for attempted murder (Penal Code, §§ 187/664)[1] and burglary (§ 459).  Wren also appeals his conviction for dissuading a witness (§ 136, subd. (a)(2)).[2]  They challenge the admission of an America Online (AOL) Instant Messenger (AIM) status update and the effectiveness of their attorneys.  Wren also questions the sufficiency of the evidence underlying his attempted murder and burglary convictions.  None of defendants' arguments has merit.  We affirm Wren's judgment, and affirm and modify Toy's judgment.[3]

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] Toy does not appeal his conviction for being a felon in possession of a firearm.  (Former § 12020, subd. (a)(1), repealed by Stats. 2010, ch. 711, § 4.)

[3] Concurrently with the filing of his opinion, we deny by separate order Toy's Petition for Writ of Habeas Corpus in case 2d Civil No. B243745.

*FACTS AND PROCEDURAL HISTORY*

I. *Offense Conduct*

We recite the facts in the light most favorable to the judgments.

In 2009, Wren and Toy (collectively, Defendants) were friends with one another and members of the East Side 87 Kitchen Crips gang. Defendants were also friends with Andrea Bryant, and are cousins to three of Bryant's children.

In April 2009, Wren made it clear he disliked Bryant's boyfriend, Justin Matthews (Matthews). Earlier that month, Matthews had not helped Wren when Wren got into a fist fight while defending Bryant's good name. Wren was still angry with Matthews in early October 2009, when he told Bryant, "[I]f I catch [Matthews] outside your house, I'll bust his head."

On October 11, 2009, Toy shot Matthews. Earlier that morning, Toy had stopped by Bryant's apartment to visit and had looked around the apartment as he chatted with Bryant. After Toy left, Bryant walked to the apartment upstairs to see her cousin, Kendra Evans (Evans). Wren was there, and immediately stopped talking once Bryant entered the apartment. Wren appeared to be angry with Bryant. When Bryant returned to her apartment, Wren followed her without saying a word, and sat down on the flowerbed three feet in front of the door to her apartment.

Wren pulled out his cell phone and appeared to be typing something. Moments later, Bryant glanced at her cell phone. She and Wren regularly used their phones to converse using AOL's Instant Messenger program. Bryant noticed that the status message for Wren's account had changed. It had read "Available" before Bryant went to Evans's apartment, but had since been changed to read: "LETS C DIS KLWN CUM OUT DAT HSE, LOL, LET ME SHOW DAT ASS HOW SERIOUS IAM BITCH. DIIIS KITCHEN THIRSTY BITCHES."

Toy and Wren watched Bryant leave the apartment complex. Minutes later, someone started knocking at the front door and all the windows of Bryant's apartment. Almost immediately after the knocking stopped, someone slid open the window in the master bedroom where Matthews was dozing. Matthews jumped up off the bed just in

2

time to see a gun and torso in a blue jacket emerge from behind the blinds. Toy had been wearing a blue jacket earlier that morning. Matthews saw Toy's face and they asked each other "What's up?" Toy then shot Matthews in the leg and shot at him a second time but missed. Bryant never saw Wren or Toy again.

After Wren was arrested, he called Bryant five or six times. He never denied his involvement and repeatedly apologized. He also offered her $30,000 if she and Matthews would change their stories. At Wren's behest, Wren's sister also called Bryant. She repeated Wren's bribe and also threatened Bryant with violence. One of Wren's fellow gang members further threatened Bryant, and beat up the father of her children on the day Bryant testified at Wren's preliminary hearing.

## II. *Prosecution*

Defendants were eventually charged with, and convicted of, the burglary of Bryant's apartment, the attempted murder of Matthews, and various firearms enhancements. Wren was also convicted of attempting to dissuade Bryant's testimony.[4] The court imposed a sentence of life plus three years for Wren, and a sentence of life plus life plus twenty-five years to life for Toy.

## *DISCUSSION*

### I. *Admission of AIM Status Update*

Defendants argue that the trial court erred in admitting evidence that Wren updated the status message of his AIM account.[5] The trial court admitted this evidence after an evidentiary hearing at which Bryant explained how AIM works. She testified that a user creates a username and password and gives that username to others who then

---

[4] The jury acquitted the Defendants of the attempted murder and assault of Bryant's five-year-old daughter, whose presence in the bedroom when Toy shot Matthews was disputed. The jury also found the gang allegations not true.

[5] The jury heard Bryant's testimony on this point and saw a photograph Bryant took of her cell phone displaying the update. On appeal, Defendants do not dispute that the photograph accurately depicted what was on the phone. Instead, they focus on whether Wren sent the update.

3

add the user as a "buddy." The user can then either send person-to-person instant messages or can broadcast a "status" update to all "buddies."

Defendants present two challenges to this evidence. First, they assert that the status update was not properly authenticated. In their view, Bryant could not authenticate the update because she was not physically present when Wren allegedly typed the update, because she did not work for AOL, and because someone pretending to be Wren could have updated his status. Second, Defendants contend that the probative value of the update was substantially outweighed by the dangers of unfair prejudice and misleading the jury. In particular, they claim the update was of marginal relevance because it did not expressly refer to the April incident, any murder attempt, or to Matthews. We review the trial court's authentication and relevance rulings for an abuse of discretion. (*People v. Smith* (2009) 179 Cal.App.4th 986, 1001 (*Smith*); *People v. Valdez* (2012) 55 Cal.4th 82, 133.)

A. *Authentication*

To authenticate a "writing" (Evid. Code, §§ 1400, 250), its proponent must present enough evidence "'. . . to permit the trier of fact to find that it is authentic. . . .'" (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1434-1435 (*Valdez*).) Authentication is a flexible concept, and there are many ways to establish that a writing is authentic. (Evid. Code, § 1410.)

The People met their threshold burden in this case. Bryant testified that the update was posted from the same AIM account she had used to communicate with Wren for nearly two years. (*United States v. Owens* (N.D. Mass. 2010) 2010 U.S. Dist. LEXIS 37134 at pp. 15-16 [extended use of online channel of communication may authenticate] (*Owens*).) Wren often used his phone to access AIM, and both Bryant and Matthews saw Wren typing on his phone during the window of time that Wren's status was updated. (Evid. Code, § 1413 ["A writing may be authenticated by anyone who saw the writing made or executed . . ."].) The update also included content tied to Wren. The update referred to the author as "[This] Kitchen" and Wren belonged to the Kitchen Crips gang. Moreover, the author dared "[this clown]" to leave the "[house]," just as Wren had

4

warned Bryant that Matthews should not do. Moreover, Wren's account was password protected, making it more difficult for someone to hack his account. (*Valdez*, *supra*, 201 Cal.App.4th at p. 1436.) The sum of this circumstantial evidence is sufficient to permit a jury to find that Wren updated the status of his own AIM account. (*Smith*, *supra*, 179 Cal.App.4th at p. 1001 ["Circumstantial evidence [is a] valid means of authentication"].)

We are not persuaded by Defendants' arguments to the contrary. They cite no precedent in support of their contention that authentication *requires* testimony by an AOL employee or by someone looking over Wren's shoulder. Nor will we adopt such rigid rules because they would be at odds with our common-sense approach to authentication.

Defendants further rely on *People v. Beckley* (2010) 185 Cal.App.4th 509, for the proposition that the People did not meet its burden because "'. . . hackers can adulterate the content of *any* website from *any* location at *any* time.'" (*Id.* at pp. 515-516.) As an initial matter, *Beckley* is distinguishable on its facts. In *Beckley*, the People sought to authenticate a photograph found on a website, but presented no testimony that the photograph accurately depicted the event photographed and no expert testimony that the photograph was genuine and not altered digitally. (*Id.* at pp. 514-515.) The primary issue here is not a photograph, but whether Wren was the author of the status update.

We decline to read *Beckley*'s language as a broader condemnation of evidence harvested from the online world. Such a reading would be inconsistent with the emerging body of law upholding the admission of instant messages even when the author cannot be known with certainty. (See *Owens*, *supra*, 2010 U.S. Dist. LEXIS 37134 at pp. 15-16; *United States v. Nobrega* (D. Me. 2011) 2011 U.S. Dist. LEXIS 55271 at pp. 18-19.) Such a reading would also reject a fundamental principal underlying authentication: "'. . . The fact that conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility. . . . [Citations.]'" (*Valdez*, *supra*, 201 Cal.App.4th at p. 1435.)

5

Accordingly, the trial court did not abuse its discretion in concluding that there was sufficient evidence to sustain the admission of the status update.[6]

B. *Evidence Code section 352 balancing*

Defendants further assert that the update should have been excluded as substantially more prejudicial than probative under Evidence Code section 352. The court did not abuse its discretion. The update was quite probative of Wren's intent and his motive. Nor was its value substantially undercut by Wren's decision not to be overly detailed in laying out his exact plan for how he was going to "show [that] ass how serious" he was. Although certainly prejudicial to Defendants, the update was not *unfairly* prejudicial. For these reasons, the trial court's balancing of these considerations was not erroneous. This conclusion requires us to reject Defendants' further contention that the misapplication of Evidence Code section 352 violated due process. (*People v. Partida* (2005) 37 Cal.4th 428, 435.)

II. *Ineffective Assistance of Counsel*

Defendants next raise several claims regarding the effectiveness of their counsel. To prevail, Defendants must establish that (1) their attorneys provided deficient performance; and (2) but for counsels' errors, there is a reasonable probability the result of the proceeding would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694.) We review counsel's performance deferentially. (*In re Jones* (1996) 13 Cal.4th 552, 561.)

A. *Question eliciting double hearsay regarding Wren's solicitation of others to shoot Matthews*

During her cross examination, Bryant testified that the conversation she interrupted between Wren and her cousin Evans might have dealt with whether Matthews was in Bryant's apartment that morning. Toy's counsel then asked, "So you would have

---

[6] Because it is sufficiently authenticated as originating from Wren, the update is admissible under hearsay exception for party admissions. (See Evid. Code § 1220; accord *United States v. Newton* (1st Cir. 1989) 891 F.2d 944, 947.)

6

reason to believe [Evans] would be in leave [sic] with [Wren] to get [Matthews]?" Bryant responded that Evans "might have told [Wren] something." Bryant then recounted how Evans's boyfriend had told Bryant that Wren "tried to get [the boyfriend] to do the hit, but he wouldn't do it so that's why [Wren] sent [Toy]." Neither counsel objected to the answer. Defendants now claim Toy's counsel was ineffective in asking that question and both counsel were ineffective for not objecting to the answer.

We start with the question. Because the question itself was not one "a reasonably competent counsel would have known would elicit an incriminating response" (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1330), Toy's counsel was not ineffective for asking it.

In examining the effectiveness of counsel for not objecting to the answer, we first examine the threshold issue whether the answer is objectionable. We conclude that it was. Bryant's answer entailed two potential layers of hearsay: (1) what Wren discussed with Evans's boyfriend; and (2) what the boyfriend told Bryant. The first layer is admissible as a party admission (see Evid. Code § 1220), but no exception applies to the second layer.

This requires us to ascertain whether the absence of an objection constituted deficient performance. It did not. The failure to make a valid objection, without more, "rarely rises to a level implicating one's constitutional right to effective legal counsel. [Citation.]" (*People v. Boyette* (2002) 29 Cal.4th 381, 433.) That is because "'. . . [t]he choice of when to object is inherently a matter of trial tactics . . . . [Citations.]'" (*People v. Farnam* (2001) 28 Cal.4th 104, 202.) Courts will not infer ineffectiveness "unless there could be no conceivable reason" for counsel's tactical decision not to object. (*People v. Weaver* (2001) 26 Cal.4th 876, 926.) We can infer several reasons here. Objecting might have highlighted the damaging evidence. (*People v. Stewart* (2004) 33 Cal.4th 425, 509.) It also might have prompted the People to call as a witness Evans's boyfriend who, if he denied the statements, could ostensibly be impeached with them. (*People v. Lucero* (2000) 23 Cal.4th 692, 715-716; *People v. Green* (1971) 3 Cal.3d 981, 988-989.) The cases Defendants cite are unhelpful because

7

they do not discuss, or even acknowledge, the issue of tactics. (See *People v. Sundlee* (1977) 70 Cal.App.3d 477, 482-483; *People v. Valencia* (2006) 146 Cal.App.4th 92, 103-104.)

Alternatively, we also conclude that the admission of this evidence was not prejudicial. Bryant's statement was never mentioned again during the trial. Additionally, this evidence did not negate the otherwise substantial evidence of guilt as to each defendant. Toy was positively identified as the shooter. Wren's prior threats, his status update, his conduct in following and watching Bryant, his post-shooting disappearance, and his post-arrest attempted bribes collectively establish his guilt irrespective of the statement of Evans's boyfriend.

B. *Question eliciting prior, dismissed charges against Defendants*

Toy's counsel also asked the People's gang expert how he knew Toy was a gang member. The expert responded that Wren had named Toy as a gang member when Wren was being interrogated for a shooting in 2006. Counsel went on to clarify that the 2006 charges against Wren and Toy were ultimately dropped. Defendants now argue that this question, and counsel's failure to make a valid objection to the answer, constitutes ineffectiveness. Toy further objects on the ground that the answer elicited evidence of *his* gang involvement.

We need not decide the question of ineffectiveness because this exchange was not prejudicial to either defendant. The impact of expert's mention of the 2006 case was largely ameliorated by the evidence that the case was dismissed. Given the evidence of guilt detailed above, this brief exchange does not undermine our confidence in the jury's verdict. Nor was the mention of Toy's gang affiliation unduly prejudicial because it was cumulative of other evidence of Toy's gang membership.

C. *Question eliciting Toy's offer to bribe Bryant*

Toy lastly contends that his counsel was constitutionally ineffective for not objecting when Bryant testified, during her direct examination, that Wren's sister had said that Toy would contribute to the bribe money. This statement is not objectionable. It involves two layers of hearsay: (1) what Toy said to Wren's sister; and (2) what Wren's

8

sister said to Bryant. However, both fall into exceptions. The first statement is admissible as a party admission. (Evid. Code § 1220.) The second is the statement of a co-conspirator (Wren's sister) (*id.*, § 1223), and the conspiracy is independently established by Wren's further acts in attempting to bribe Bryant (*People v. Cowan* (2010) 50 Cal.4th 401, 482; *People v. Hinton* (2006) 37 Cal.4th 839, 895). Bryant's answer was also not prejudicial because Toy was identified as the shooter and never charged with dissuading a witness.

### III. *Insufficiency of the Evidence*

Wren argues that the evidence was insufficient to support a guilty verdict for aiding and abetting Toy's burglary and attempted murder. In evaluating this claim, we examine only "'. . . whether there is substantial evidence, i.e., evidence from which a reasonable trier of fact could conclude that the prosecution sustained its burden of proof beyond a reasonable doubt. . . .'" (*People v. Assad* (2010) 189 Cal.App.4th 187, 194.) We review the evidence in the light most favorable to the verdict and assess solely whether the supporting evidence is "'. . . reasonable, inherently credible, and of solid value . . . ." (*Ibid.*)

To prove Wren guilty under an aiding and abetting theory, the People were required to prove that (1) Toy committed burglary and attempted murder; (2) Wren assisted Toy; and (3) as Wren did so, he knew of Toy's criminal purpose and had the intent of encouraging or facilitating Toy's crimes. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; *People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

Viewed in the light most favorable to the verdict, the jury had substantial evidence of each element. Matthews positively identified Toy as the person who entered Bryant's apartment and shot him. The evidence further showed that Wren had a longstanding grudge against Matthews and had, in fact, threatened him in the past. On the day of the shooting, Wren's friend Toy "cased" Bryant's apartment; Wren silently followed Bryant and parked himself in front of her door; Wren updated his status with a message indicating an intent to harm Matthews; Wren and Toy watched Bryant leave the apartment complex; Toy entered Bryant's apartment minutes later and shot Matthews;

9

Wren disappeared from the complex and never again contacted his good friend Bryant; and Wren then tried to bribe Bryant and Matthews to change their stories without professing innocence and while confessing apology. This is sufficient for a jury to find beyond a reasonable doubt that Toy committed burglary and attempted murder, and that Wren knew what Toy was doing, also intended to kill Matthews, and assisted Toy by acting as a "look out."

Wren nevertheless argues that this evidence is insufficient for three reasons. First, he points to several inconsistencies among and between Bryant's and Matthews's various statements. However, it is well settled that "[r]esolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. . . ." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Second, Wren presents several reasons why his involvement in this shooting makes no sense: Why would he wait until October to hurt Matthews (rather than acting sooner)? Why shoot him (rather than have a fist fight)? Why endanger Bryant's children (rather than shoot Matthews elsewhere)? These are arguments for a jury, and do not undermine the evidence that *was* presented. Lastly, he argues that his bribes do not unequivocally equate to a consciousness of guilt. This is also an attempt to re-argue the significance of the evidence—not its sufficiency.

IV. *Toy's Sentence*

At the sentencing hearing, the trial court imposed the mandatory sentence of life without the possibility of parole on the attempted premeditated murder count (§ 664, subd. (a)); the court doubled that sentence by imposing a second life term, and then imposed a consecutive term of 25 years to life for the enhancement for personal discharge of a firearm (§ 12022.53, subd. (d)). The Abstract of Judgment inconsistently reflects a sentence on this count of 25 years to life.

Both the orally pronounced sentence and the abstract are incorrect, and result in an unauthorized sentence that we will correct on appeal. (*People v. Bradley* (1998) 64 Cal.App.4th 386, 391.) Under the statutory language of section 667, subdivision (e)(1), a sentence of life without possibility of parole is not doubled under the Three Strikes Law. (*People v. Smithson* (2000) 79 Cal.App.4th 486, 503; but see *People*

10

*v. Hardy* (1999) 73 Cal.App.4th 1429, 1433-1434.)  Thus, the appropriate sentence on Toy's attempted murder count (count 1) is life without the possibility of parole followed by 25 years to life for the enhancement.  The sentences on the other counts remain as orally pronounced.

### DISPOSITION

The judgment in Wren's case is affirmed.  We modify Toy's sentence on count 1 (and concomitantly amend the Abstract of Judgment) to reflect a sentence of life without the possibility of parole followed by a consecutive 25-year-to life sentence for the discharge-of-a-firearm enhancement.  The Superior Court Clerk shall prepare an amended abstract of judgment incorporating these changes and forward a certified copy to the Department of Corrections and Rehabilitation.  As so modified, the judgment in Toy's case is affirmed.

NOT TO BE PUBLISHED.


HOFFSTADT, J.[*]


We concur:



GILBERT, P. J.



PERREN, J.

_____

[*] Assigned by the Chairperson of the Judicial Council.

11

John S. Fisher, Judge

Superior Court County of Los Angeles
_____


Leslie Conrad, under appointment by the Court of Appeal, for Defendant and Appellant Antonio Toy.

Alan Stern, under appointment by the Court of Appeal, for Defendant and Appellant Marvin J. Wren.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.